IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:24-cv-02083-K-BT |
| EBONY BROWN, TIFFANY ALPHONSE, LIBERTY TAXES, LLC, and LIBERTY CONSULTANTS, LLC | § § § § § | |
| Defendants. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff JTH Tax d/b/a Liberty Tax Service filed this civil action against Defendants Ebony Brown, Tiffany Alphonse, Liberty Taxes LLC, and Liberty Consultants LLC alleging claims of trademark infringement, trademark dilution, unfair competition, and cybersquatting. *See generally* Am. Compl. (ECF No. 25). Plaintiff dismissed with prejudice all its claims against Defendant Brown (ECF No. 39) and obtained a Clerk's Entry of Default against the remaining Defendants. (ECF No. 41). Plaintiff now seeks entry of final default judgment against the remaining Defendants. (ECF No. 40). The Court has considered the motion, the briefing, the materials submitted by Plaintiff, and the applicable law. The Court finds that Plaintiff's Motion should be, and hereby is, **GRANTED in part**. Accordingly, the Court **ORDERS** that Defendants Alphonse, Liberty Taxes, LLC, and Liberty Consultants, LLC, their agents,

1

employees, successors, and all persons acting in concert with them, are permanently enjoined from using Plaintiff's trademarks or any confusingly similar variants in connection with the marketing, promotion, or sale of tax preparation services—specifically including the use of "Liberty" as part of any business name or mark, or in any advertising, signage, website, or online domain, including but not limited to any social media platforms or third-party listing services. The Court **ORDERS** Defendants Alphonse, Liberty Taxes, LLC, and Liberty Consultants, LLC, their agents, employees, successors, and all persons acting in concert with them, to transfer to Plaintiff any infringing domain names—including but not limited to libertyconsultants.net—which incorporate or are confusingly similar to Plaintiff's trademarks. The Court further **ORDERS** Defendants to pay Plaintiff $200,000 in damages, as well as attorneys' fees and costs. Plaintiff's Second Motion for Preliminary Injunction (ECF No. 29) is **DENIED as moot**.

## I.    Factual Background

Plaintiff—operating under the name Liberty Tax Service—alleges that it is "one of the largest and most well-known tax preparation service franchisors in the United States" with "over 2,200 tax preparation service centers and over 21,000 tax professionals located throughout the United States and Canada." Am. Compl. at ¶¶ 14–15. It alleges that it is "the owner of all right, title, and interest in certain common law trademarks as well as a number of federal service mark registrations with the United

States Patent and Trademark Office" (USPTO). *Id.* at ¶ 18. Specifically, Plaintiff alleges it owns the following six trademarks (the "Liberty Tax marks"):

| | Mark | Information |
|---|---|---|
| 1. | LIBERTY TAX SERVICE® | Reg. No. 2,314,991<br><br>Dated 2/1/2000<br><br>First used in commerce for tax preparation services as early as December 1997.<br><br>Am. Compl. ¶ 19. |
| 2. | LIBERTY TAX® | Reg. No. 2,465,670<br><br>Dated 7/3/2001<br><br>First used in commerce for tax preparation services as early as January 2000.<br><br>Am. Compl. ¶ 20. |
| 3. | LIBERTY INCOME TAX® | Reg. No. 2,459,756<br><br>Dated 7/3/2001<br><br>First used in commerce for tax preparation services as early as March 2001.<br><br>Am. Compl. ¶ 21. |
| 4. | The registered LIBERTY TAX SERVICE with Statue of Liberty Design mark:<br><br> | Reg. No. 2,479,692<br><br>Dated 8/21/2001<br><br>First used in commerce for tax preparation services as early as January 1999.<br><br>Am. Compl. ¶ 22 |
| 5. | The Statue of Liberty sculpture mark for tax preparation, consisting of "the nonfunctional | Reg. No. 3,738,741 |

| | | |
|---|---|---|
| | elements of a three-dimensional sculpture in the shape of the Statue of Liberty on a pedestal":  | Dated 7/19/2010<br><br>First used in commerce for tax preparation services as early as January 2004.<br><br>Am. Compl. ¶ 23 |
| 6. | "The registered Statue of Liberty design for tax preparation services," which consists of "the non-functional elements of a three dimensional Statue of Liberty costume":  | Reg. No. 3,167,134<br><br>Dated 11/7/2006<br><br>First used in commerce for tax preparation services as early as September 2002.<br><br>Am. Compl. ¶ 24. |

Am. Compl. at ¶¶ 19–25.

Plaintiff asserts that the Liberty Tax marks are "strong and unique, inherently distinctive, and protectable without proof of secondary meaning." Am. Compl. at ¶ 26. It "has invested millions of dollars and decades of time and effort to create customer recognition of the [Liberty Tax marks] to advertise and promote" its services over the past thirty years, which has in turn "resulted in millions of dollars in revenue." *Id.* at ¶¶ 27, 29. Consequently, the Liberty Tax marks "have become instantaneously recognized and highly regarded as representing a business that provides trusted and

reliable tax preparation services" and "were famous before Defendants began infringing the marks." *Id.* at ¶ 31.

In 2022, Ebony Brown and Tiffany Alphonse formed Liberty Taxes, LLC and began using the Liberty Tax marks to advertise, offer, and provide tax preparation services nationwide. *Id.* at ¶ 33. In December 2022, Defendants created the domain name "libertytaxesllc.com" and listed Defendant Alphonse as its primary contact. *Id.* at ¶ 34. Plaintiff alleges that Defendants neither sought nor obtained its permission or authority to use the Liberty Tax marks for any purposes, and consequently Defendants willfully infringed and diluted its trademarks and domain name. *Id.* at ¶ 36. Plaintiff attached the following five images to its Complaint to demonstrate Defendants' trademark infringement:



**Figure 9**



**Figure 10**



**Figure 11**



**Figure 12**



**Figure 13**

Am. Compl. at ¶ 36.

Plaintiff became aware "that Defendants were operating and advertising a tax preparation business under the name Liberty Taxes and using the domain name www.libertytaxesLLC.com" in February 2023 and consequently sent a cease-and-desist letter on February 10, 2023. *Id.* at ¶ 37. When Defendants did not respond to the cease-and-desist letter, Plaintiff filed a Uniform Domain-Name Dispute-Resolution Policy (UDRP) complaint against Defendant Alphonse, after which she agreed to transfer the domain name to Plaintiff. *Id.* at ¶ 38. Plaintiff subsequently shut down the domain. *Id.*

Plaintiff asserts that Defendants' use of its registered marks and engaging in unfair competition "ha[s] been committed with the intent to cause confusion and mistake, and to deceive consumers and lender partners in the marketplace." *Id.* at ¶ 40. Moreover, "Plaintiff is aware of at least one instance of actual confusion" in January 2024, when a customer visited Defendants' company "thinking it was Plaintiff's branch" and then "complained to Plaintiff about issues she was having with [Defendants], thinking the two companies were one in the same." *Id.*

In September 2024, Defendant Alphonse formed Liberty Consultants LLC, allegedly "in a calculated effort to evade Plaintiff's claims while continuing to infringe Plaintiff's trademarks." *Id.* at ¶ 41. Liberty Consultants LLC continues to operate in the same industry as Plaintiff—providing tax preparation services. *Id.* at ¶ 42. Plaintiff alleges that "[b]y using the name 'Liberty' [in the same industry as Plaintiff],

Defendant Alphonse continues to create a likelihood of confusion among consumers and falsely implies an affiliation or connection with Plaintiff." *Id.* Its Complaint further states that "Defendants' acts have caused and will continue to cause Plaintiff Liberty Tax to suffer damages to its business, reputation, and good will, . . . loss of sales and profits[,] . . . and [] incur attorneys' fees." *Id.* at ¶ 46.

Plaintiff initially filed this action (ECF No. 1) and a Motion for Preliminary Injunction (ECF No. 5) on August 15, 2024. It later amended its complaint (ECF No. 25) and filed a Second Motion for Preliminary Injunction (ECF No. 29). In its Amended Complaint, Plaintiff alleges the following causes of action against Defendants: (1) trademark infringement under the Lanham Act (15 U.S.C. § 1114), Texas common law, and Texas Business & Commerce Code § 16.102; (2) unfair competition under the Lanham Act (15 U.S.C. § 1125(a)) and Texas common law; (3) dilution under the Lanham Act (15 U.S.C. § 1125(c)) and Texas Business & Commerce Code § 16.103; and (4) cybersquatting under the Anti-Cybersquatting Consumer Protection Act (ACPA). *See* Am. Compl. at ¶¶ 44–96.

Despite Plaintiff properly effectuating service, *see* ECF Nos. 13, 32, 34, Defendants Alphonse, Liberty Taxes, LLC, and Liberty Consultants, LLC did not file an answer or otherwise respond to Plaintiff's pleadings or motions for preliminary injunction. On May 20, 2025, Plaintiff filed a combined Motion for Entry of Default and Default Judgment, seeking default judgment against Defendants on all of its claims; a permanent injunction enjoining Defendants from using Plaintiff's trademarks or

confusingly similar variants; an order directing "the immediate transfer of any and all domain names registered, maintained, or controlled by Defendants that incorporate Plaintiff's trademarks or confusingly similar terms"; statutory damages; and attorneys' fees and costs. Mot. at 7 (ECF No. 40). The Clerk of the Court entered default against Defendants on August 19, 2025. (ECF No. 41). Thus, Plaintiff's motions are ripe for review.

## II.    Legal Standard

Federal Rule of Civil Procedure 55 governs applications for default and default judgment. FED. R. CIV. P. 55. Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure. *Id.* (citing FED. R. CIV. P. 55(a)). After the entry of default, a plaintiff may apply to the court for a default judgment. *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). However, it is a remedy generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (4th ed.)). A default judgment "must be 'supported by well-pleaded allegations' and must have 'a sufficient basis in the pleadings.'" *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 498 (5th Cir.

9

2015) (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The well-pleaded allegations in the complaint are assumed to be true. *Nishimatsu*, 515 F.2d at 1206.

In determining whether a default judgment should be entered, the Court considers (1) whether the entry of default judgment is procedurally warranted; (2) whether there is a sufficient basis in the pleadings for the judgment; and (3) the relief, if any, to which the plaintiff is entitled. *MetroPCS v. Mohammed*, 2017 WL 2590108, at *2 (N.D. Tex. Apr. 24, 2017), *adopted by*, 2017 WL 2579040 (N.D. Tex. June 14, 2017) (Lindsay, J.) (citing *United States v. 1998 Freightliner*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008)).

## III. Analysis

### A. Default Judgment is Procedurally Proper.

The Fifth Circuit looks to the following six factors in determining whether default judgment is procedurally warranted: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive*

*Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (2d ed. 1983)).

Here, there are no material issues of fact; rather, due to the default posture of this case, the Court takes Plaintiff's allegations against Defendants as true. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206; *see also Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017) (Lynn, J.). There is no substantial prejudice against Defendants. Defendants were properly served (*see* ECF Nos. 13, 32, 34), the grounds for default against Defendants were clearly established, and the Clerk properly entered a default against Defendants. Entering default judgment against a defendant, who has taken no action to respond to a suit, is not "harsh." *See Joe Hand*, 2017 WL 373478, at *2 (citing *Lindsey*, 161 F.3d at 893). Defendants have had over a year to respond to Plaintiff's Complaint or otherwise appear in this case, which mitigates the harshness of a default judgment. *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.). Further, the Court is aware of no facts that would cause it to set aside the default judgment should Defendants challenge it. Accordingly, the Court finds that the procedural requirements for entering default judgment are satisfied.

### B. Default Judgment is Substantively Proper.

Before default judgment may be entered, the Court must assess the merits of Plaintiff's claims and the sufficiency of the Complaint. *Nishimatsu*, 515 F.2d at 1206 ("[A] defendant's default does not in itself warrant the court in entering a default

judgment. There must be a sufficient basis in the pleadings for the judgment entered."). In conducting this analysis courts look to the pleading requirements set out in Rule 8(a)(2). *See Wooten*, 788 F.3d at 498. Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

> 1. Default judgment is warranted for Plaintiff's claims for trademark infringement and unfair competition under the Lanham Act and Texas common law, but not for its claims under Tex. Bus. & Comm. Code § 16.102.

To succeed in a trademark infringement claim under the Lanham Act, a plaintiff must show (1) it possesses a legally protectable trademark, and (2) Defendants' use of that trademark "'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 450 (5th Cir. 2017) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). "The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act." *Id.* (citation omitted). Moreover, the same elements also apply to establish a claim for unfair competition under 15 U.S.C. § 1125(a) and Texas common law. *Primesource Bldg. Prods., Inc. v. Hillman Grp., Inc.*,

2015 WL 11121367, at *3 (N.D. Tex. Mar. 31, 2015) (Boyle, J.) (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010)).

Proof of registration with the United States Patent and Trademark Office (USPTO) is "prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services." *Amazing Spaces, Inc.*, 608 F.3d at 235–36; *see also Choice Hotels Int'l, Inc. v. Cheema Invs., LLC*, 2013 WL 12125998, at *3 (N.D. Tex. Feb. 20, 2013) (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998)) ("Proof of the registration of a mark with the U.S. Patent and Trademark Office meets the threshold requirement that the mark be legally protectable from infringement."). Plaintiff has established that its marks are registered with the USPTO and are incontestable, *see* Am. Compl. at ¶¶ 18–25, and thus the Court concludes that Plaintiff has the exclusive right to use the registered trademarks in commerce with respect to the specific goods or services. *See Liberty Burger Prop. Co. v. Liberty Rebellion Rest. Grp., LLC*, 2023 WL 349790, at *5 (N.D. Tex. Jan. 20, 2023) (Brown, J.) (finding that plaintiff meets the first element of trademark infringement because "both of [p]laintiff's trademarks are registered with the USPTO"); *Choice Hotels Int'l, Inc.*, 2013 WL 12125998, at *3 (finding that plaintiff "has sufficiently supported its allegation that it has ownership of a legally protectable mark" because plaintiff showed that the mark is registered with the USPTO); *Roto-Rooter Corp. v. Garcia*, 2021 WL 327569, at *3 (E.D. Tex. Feb. 1, 2021) (concluding that, because "it is uncontroverted that [p]laintiff owns a number

of federally registered trademarks for the ROTO-ROOTER service mark," the "remaining question is whether [p]laintiff has shown [d]efendants' use of the trademark creates a substantial likelihood of confusion" and not conducting further analysis).

With respect to the second element, the Fifth Circuit assesses likelihood of confusion using the non-exhaustive list of the "digits of confusion": "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products [or services]; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). "The absence or presence of any one factor is ordinarily not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors." *Id.* Word association between the marks is, in itself, insufficient to establish a probable likelihood of confusion. *Viacom Int'l v. IJR Capital Inv., L.L.C.*, 891 F.3d 178, 192 (5th Cir. 2018). And "the court must consider the marks in the context that a customer perceives them in the marketplace." *Id.* (internal quotation marks and citation omitted). However, where a defendant uses the exact marks owned by the plaintiff, the Court is not required to analyze all the factors or "digits" of confusion because the likelihood of customer confusion is more evident. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 310–11 (5th Cir. 2008); *see also TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009).

Analyzing these factors reveals that Defendants' use of the Liberty Tax marks are likely to confuse consumers seeking tax-preparation services. "The stronger the mark, the greater likelihood of confusion," *Roto-Rooter Corp.*, 2021 WL 327569, at *3, and the pleadings indicates that Liberty Tax is an almost thirty-year-old, nationally recognized brand, *see* Am. Compl. at ¶¶ 14–16, 62–63. Moreover, a mark that is "incontestable" due to registration with the PTO—as are Plaintiff's marks—is also afforded more weight. *See Firebirds Int'l, LLC v. Firebird Restaurant Grp., LLC*, 397 F. Supp. 3d 847, 861 (N.D. Tex. 2019) (citing *Am. Rice*, 518 F.3d at 330). Defendants included the Liberty Tax marks in their first business name, "Liberty Taxes, LLC," and their revised but similar business name of "Liberty Consultants, LLC" still operates in the same field of business as Plaintiff—tax preparation services. *See* Am. Compl. at ¶¶ 33–43. Moreover, Defendants use the same advertising media as Plaintiff because both parties use "internet-based advertising" through their respective websites. *See id.* at ¶¶ 28, 36. Defendants had knowledge of Plaintiff's rights in the Liberty Tax marks as Plaintiff sent a cease-and-desist letter to Defendants, which Defendants ignored. *Id.* at ¶ 37; *id.* Ex. 10. Moreover, evidence of actual confusion and care exercised by potential customers is stated in the record. *See id.* at ¶ 40.

Thus, as a whole, the Court finds that Defendants' use of the Liberty Tax marks creates a substantial likelihood of confusion. *See Roto-Rooter Corp.*, 2021 WL 327569, at *3 (finding that plaintiff is entitled to a default judgment on its trademark infringement claim when defendant included plaintiff's mark in their business name

15

while operating in the same field of business and did not respond to a cease-and-desist letter, and plaintiff is a nationally recognized brand); *Liberty Burger Prop. Co.*, 2023 WL 349790, at \*5 (finding that defendant's "terms and corresponding logo are identical or confusingly similar to plaintiff's mark" and thus using the mark "in connection with [d]efendant's services is likely to cause confusion (i) that [d]efendant's goods and services are those of [p]laintiff or are otherwise endorsed, sponsored, or approved by [p]laintiff or (ii) that there is affiliation or association between [d]efendant] and [p]laintiff"); *GS Holistic, LLC v. Haz Invs., LLC*, 2024 WL 874477, at \*10 (N.D. Tex. Feb. 14, 2024) (concluding that plaintiff ultimately establishes the digits of confusion when strength of the mark, mark similarity, product similarity, and intent to confuse weigh in plaintiff's favor even though other factors are neutral or weigh against plaintiff), *adopted by*, 2024 WL 873023 (N.D. Tex. Feb. 29, 2024).

As the default judgment is procedurally warranted and there is sufficient basis for the pleadings, Plaintiff is entitled to a default judgment on its trademark infringement and unfair competition claims under the Lanham Act and Texas common law.

Plaintiff also asserts a claim for trademark infringement under TEXAS BUS. & COMM. CODE § 16.102. *See* Am. Compl. at ¶ 93. However, "Courts have repeatedly held that a trademark must be registered in Texas in order to maintain a cause of action under [TEX. BUS. & COMM. CODE] Section 16.102." *Priority Design & Serv., Inc. v. Plaza*, 2019 WL 2124677, at \*3 (W.D. Tex. May 15, 2019) (citing cases); *see also Transparent*

*Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at \*7 (N.D. Tex. July 28, 2020) (Rutherford, J.) ("[S]everal courts in the Fifth Circuit have held that registration of the asserted mark with the Texas Secretary of State is an essential element of a trademark infringement claim under § 16.102."), *adopted by*, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020). Nowhere in its pleadings does Plaintiff allege that its marks are registered with the Texas Secretary of State. Thus, default judgment is *not* substantively proper as to Plaintiff's claim for trademark infringement under Tex. Bus. & Comm. Code § 16.102. *See Transparent Energy LLC*, 2020 WL 4678438, at \*7–8 (granting motion to dismiss as to plaintiff's trademark infringement claim under section 16.102 because the complaint does not allege that plaintiff's mark is registered with the Texas Secretary of State); *Vesta Corp. v. Vesta Mgmt. Servs., LLC*, 2016 WL 8710440, at \*14 (S.D. Tex. Sept. 30, 2016) (granting summary judgment on a trademark claim brought under § 16.102 because the trademark was registered federally but not in Texas).

### 2.   Default judgment is proper on Plaintiff's cybersquatting claim.

Under the Anti-Cybersquatting Consumer Protection Act (ACPA), a person is liable for "cybersquatting" if, without regard to the goods or services of the parties, that person:

> (i) has a bad faith intent to profit from that mark, . . . ; and (ii) registers, traffics in, or uses a domain name that—(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d).

Plaintiff asserts its ACPA cause of action regarding Defendants' domain name libertytaxesllc.com, which is used by Defendants to promote, advertise, and sell their tax preparation and related services. Am. Compl. at ¶ 74. Plaintiff argues that "[t]he dominant and distinctive portion of the domain name is identical to" the Liberty Tax marks and that Defendants "used the domain name in bad faith with the intent to profit from unauthorized use of Plaintiff's marks." *Id.* at ¶¶ 74–75. Plaintiff's present motion also alleges that Defendants' new domain name created after Plaintiff filed its First Amended Complaint, libertyconsultants.net, continues to incorporate its protected marks and is "being used in a manner likely to confuse customers into believing there is an affiliation with Plaintiff's well-known tax services." Mot. at ¶ 14. "[F]ederal courts routinely recognize that 'domain names that are substantially the same as a trademark are confusingly similar and create a presumption of confusion.'" *Real Est. Edge, LLC v. Campbell*, 2019 WL 830966, at *3 (W.D. Tex. Feb. 21, 2019) (citing *US Green Bldg. Council, Inc. v. Wardell*, 2016 WL 3752964, at *6 (N.D. Tex. June 17, 2016), *adopted sub nom. US Green Bldg. Council, Inc v. Wardell*, 2016 WL 3766362 (N.D. Tex. July 11, 2016)).

The Court finds that these allegations are "well-pleaded" for default judgment purposes. *See Pathway Senior Living LLC v. Pathways Senior Living LLC*, 2016 WL 1059536, at *4 (N.D. Tex. Mar. 17, 2016) (Lynn, J.) (concluding that the court can enter default judgment on plaintiff's claim for violation of the ACPA); *Real Est. Edge,*

*LLC*, 2019 WL 830966, at *3–5 (finding that defendant, who is in default, is liable to plaintiff under the ACPA). Thus, default judgment is substantively warranted as to Plaintiff's cybersquatting claim.

### 3.  Default judgment is proper on Plaintiff's dilution claim.

Plaintiff also alleges claims for dilution under the Lanham Act and Texas law. Am. Compl. at ¶¶ 80–88. A federal trademark dilution claim under 15 U.S.C. § 1125(c) requires four elements: (1) the plaintiff owns a famous and distinctive mark; (2) the defendant began using the senior mark after it became famous; (3) similarity between the senior mark and junior mark causes association between the two; and (4) the association is likely to blur or tarnish the senior mark. *See* 15 U.S.C. § 1125(c); *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 548 (5th Cir. 2015). Courts assess four main factors to determine fame: (i) the duration, extent, and geographic reach of advertising and publicity of the mark; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extend of actual recognition of the mark; and (iv) whether the mark was registered. 15 U.S.C. § 1125(c)(2)(A). Generally, the same requirements apply to a dilution claim under the Texas Anti-Dilution statute, but "Texas dilution claims only require a showing that dilution is 'likely' while federal law requires a showing of actual dilution." *Mott's LLP v. Commercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 787–89, 789 n.4 (W.D. Tex. Dec. 14, 2020); *see also Freds Fish Fry, Inc. v. Galvan*, 2025 WL 890183, at *5–6 (W.D. Tex. Mar. 11, 2025) (discussing the requirements under TEX. BUS. & COMM. CODE

§ 16.103). Moreover, in contrast to trademark infringement under § 16.102, "[d]ilution under § 16.103 . . . may be asserted whether or not the mark at issue is registered with the Texas Secretary of State." *Transparent Energy LLC*, 2020 WL 4678438, at *8.

Under both the federal and Texas statutes, dilution can occur by tarnishing or blurring. *See Mott's LLP*, 507 F. Supp. 3d. at 788; *Viahart, LLC v. Chickadee Business Solutions, LLC*, 2021 WL 6333033, at *9 (E.D. Tex. July 2, 2021). Dilution by tarnishment relies on "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C); *see also Freds Fish Fry, LLC*, 2025 WL 890183, at *5 (explaining the same for the Texas Anti-Dilution statute). "Tarnishing can occur when plaintiff's mark is associated with a low quality product." *Viahart*, 2021 WL 6333033, at *9. By contrast, dilution by blurring occurs when "association arising from the similarity between a mark or trade name and a famous mark . . . impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B); *Freds Fish Fry, LLC*, 2025 WL 890183, at *5 (explaining the same for the Texas Anti-Dilution statute).

Here, Plaintiff expressly alleges dilution by blurring theory, see Am. Compl. at ¶ 84. Moreover, it has adequately pleaded the first element of trademark dilution by alleging that its marks are famous and distinctive, and that they "have become uniquely and exclusively associated with [Plaintiff] and its services." *Id.* at ¶¶ 30–31, 62–63. The company has allegedly "over 2,200 tax preparation service centers and over 21,000 tax

professionals located through the United States and Canada," and it "has invested millions of dollars and decades of time and effort to create customer recognition of [the Liberty Tax marks] to advertise and promote its Liberty Tax Service® tax preparation services." *Id.* at ¶¶ 15, 27. It further pleads that "as a result of [Plaintiff's] continuous, extensive, and exclusive use of [the Liberty Tax marks], the marks have become instantaneously recognized and highly regarded as representing a business that provides trusted and reliable tax preparation services." *Id.* at ¶ 31.

As to the second element, Plaintiff alleges that Defendants did not begin using the Liberty Tax marks until 2022, which is 25 years after it first began using its marks in 1997. *See Id.* at ¶¶ 15, 19, 28, 33–34. Regarding the third element, Plaintiff further pleads that the similarity between the marks gives rise to an association between them, as it "is aware of at least one instance of actual confusion" where a customer visited Defendants' location "thinking it was Plaintiff's branch" and then "complained to Plaintiff about issues she was having with [Defendants' company], thinking the two companies were one in the same." *Id.* at ¶ 40. The Amended Complaint also pleads that "Defendant[s'] unauthorized use is a misrepresentation to the general public, which creates a false impression and likely causes confusion or mistake upon customers that Defendants are in association with [Plaintiff], or that Defendants' services are equal to or of similar quality." *Id.* at ¶ 39. In turn, "Defendants' actions, both under Liberty Taxes LLC and now under Liberty Consultants LLC, tarnish Plaintiff's goodwill, dilute the distinctive quality of Plaintiff's trademarks, and mislead consumers

into believing there is an affiliation between Plaintiff and Defendant[s]." Am. Compl. at ¶ 44. This sufficiently alleges the fourth element of dilution.

Thus, Plaintiff has adequately alleged federal and Texas dilution under a blurring theory, and default judgment is appropriate on this claim. *See Mott's LLP*, 507 F. Supp. 3d at 788–90 (finding that plaintiff sufficiently pleaded a likelihood of dilution by blurring under the Texas Anti-Dilution statute by alleging that "[d]efendants' conduct is likely to cause initial interest confusion, point of purchase and post-sale confusion, mistake, and deception among customers and potential customers by creating the false belief that [defendants'] . . . products are made or affiliated with [plaintiff]" and that defendants have "capitalize[d] on the goodwill that [plaintiff] has worked diligently to create and maintain over decades"). *Cf. Yeti Coolers, LLC v. Mercatalyst, Inc.*, 2024 WL 1216726, at *4–5 (W.D. Tex. Mar. 21, 2024) (plaintiff failed to state a claim for federal trademark dilution because it did not allege that defendant began using plaintiff's mark after it became famous, despite sufficiently alleging the remaining elements for trademark dilution).

Plaintiff has not, however, sufficiently pleaded dilution under a tarnishment theory to warrant default judgment. It merely alleges that Defendants' misrepresentations are "tarnishing decades of goodwill created and maintained by [Plaintiff]," Am. Compl. at ¶ 39, which is insufficient. *See Mott's LLP*, 507 F. Supp. 3d at 790 (finding that plaintiff did not sufficiently allege likelihood of dilution by tarnishment—despite sufficiently alleging dilution by blurring—because plaintiff

merely alleged that defendants "have appropriated the goodwill" of its mark, which is "not enough" to "suggest that [defendants] ha[ve] tarnished the" mark). Generally, dilution by tarnishment requires alleging that its marks are "linked to products of shoddy quality, or [are] portrayed in an unwholesome or unsavory context." *Id.*; *see also Chanel Inc. v. Christian Salvatore NY Corp.*, 2023 WL 8242743 (N.D. Tex. Nov. 3, 2023) (Horan, J.) (finding that plaintiff adequately alleged federal dilution by tarnishment by "plead[ing] that the association of [plaintiff] with defendants will tarnish its marks"), *adopted by*, 2023 WL 8244044 (N.D. Tex. Nov. 28, 2023) (Kinkeade, J.).

### C. Forms of Relief

The Court must next determine if Plaintiff's requested remedies are appropriate upon the entry of default judgment. In awarding relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Plaintiff's requested relief limits the relief available on default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975). Because the requested relief does not exceed what is demanded in the pleadings, the Court now examines whether the requested relief is appropriate.

#### 1. Permanent Injunction

Plaintiff first requests the Court permanently enjoin Defendants from using the Liberty Tax marks. Specifically, Plaintiff requests that the Court enjoin:

> Defendants, their agents, employees, successors, and all persons acting in concert with them from using Plaintiff's trademarks or any confusingly similar variants in connection with the marketing, promotion, or sale of tax preparation services. This includes prohibiting the use of "Liberty" as

part of any business name or mark, or in any advertising, signage, website, or online domain, including but not limited to any social media platforms or third-party listing services.

Mot. at 7.

Under 15 U.S.C. § 1116(a), the Court has the power to grant a permanent injunction when a defendant violates the Lanham Act. To obtain a permanent injunction, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013).

The Court finds that a permanent injunction is appropriate. As previously explained, the Court finds actual success on the merits, and Plaintiff has shown that it has suffered an irreparable harm to its reputation and trademarks because of consumer confusion between the marks. *See Pathway Senior Living LLC*, 2016 WL 1059536, at *4 (finding that the first element of permanent injunctive relief was met when plaintiff had already succeeded on the merits due to the entry of default, and defendant had refused to stop infringing plaintiff's marks). Second, Plaintiff has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendants. *See Abraham*, 708 F.3d at 627. Third, ordering Defendants to refrain from future infringement will cause them minimal to no harm. Any potential harm caused

by requiring them to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted. *See Roto-Rooter Corp.*, 2021 WL 327569, at *4 (finding that "requiring compliance with the law is an insignificant penalty" for infringing on plaintiff's trademark). Plaintiff has been using its trademarks in the tax preparation business for almost thirty years, whereas Defendants did not establish their tax preparation business until 2022. Am. Compl. at ¶¶ 15, 19, 28, 33–34. Finally, an injunction would serve the public interest by promoting compliance with trademark law. *Arista Records, Inc. v. Kabani*, 2004 WL 88445, at *4 (N.D. Tex. Apr. 23, 2004).

Accordingly, a permanent injunction is an appropriate remedy upon the entry of default judgment. *See, e.g.*, *Freds Fish Fry, Inc.*, 2025 WL 890183, at *6 (finding "a permanent injunction is appropriate" because plaintiff prevails on both its Lanham Act and Texas Business and Commerce Code claims).

An injunction must be narrowly tailored to remedy only a plaintiff's specific harms. *See* FED. R. CIV. P. 65(d). The Court finds that Plaintiff's proposed injunction against Defendants is not overly broad and merely enjoins Defendants from engaging in further infringing conduct. The Court thus grants Plaintiff's request for a permanent injunction and orders Defendants to cease utilizing Plaintiff's protected marks "or confusingly similar variants in connection with the marketing, promotion, or sale of tax preparation services." Mot. at 7; *see Tortilla Town, Inc. v. Tortilla Town, LLC*, 2022 WL 22843813, at *7–8 (W.D. Tex. Nov. 7, 2022) (finding that plaintiff's proposed

injunction is "not overly broad and merely enjoins [d]efendant from engaging in further infringing conduct"); *Wearable Shoe Tree, LLC v. Does 1-601*, 2025 WL 872524, at *13 (E.D. Tex. Mar. 20, 2025) (finding permanent injunction is warranted against the defaulting defendants who committed trademark violations).

### 2. Domain Name Transfer

Plaintiff also requests that Defendants relinquish all rights in the domain name, www.libertyconsultants.net, and that this domain name be transferred to Plaintiff. Mot. at 7; *see* Am. Compl. at 25.

The ACPA provides for the remedy of a domain name transfer. 15 U.S.C. § 1125(d)(1)(C) ("In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."). Federal courts recognize that domain names identical to or "substantially the same" as a trademark are "confusingly similar to that mark and thus create a presumption of confusion." *US Green Bldg. Council, Inc.*, 2016 WL 3752964, at *6 (citing *Texas Int'l Prop. Assocs. v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 588 (N.D. Tex. 2009) (citing cases)). And courts in the Fifth Circuit have held that defendants are deemed to have admitted to acting knowingly and intentionally by virtue of a default. *See MetroPCS*, 2017 WL 2590108, at *8; *Neutron Depot, LLC v. Bankrate, Inc.*, 2016 WL 215544, at *4 (S.D. Tex. Jan. 19, 2016); *Sculpt Inc. v. Sculpt New York, LLC*, 2015 WL 6690224, at *5 (S.D. Tex. Nov. 3, 2015).

Because the domain name, libertyconsultants.net, is confusingly similar to Plaintiff's marks, and because Defendants are deemed to have acted knowingly and intentionally in infringing those marks, the Court finds that transfer of the domain name to Plaintiff is appropriate. *See US Green Bldg. Council, Inc.*, 2016 WL 3752964, at *6 (concluding that immediate transfer of defendant's domain names is appropriate because they "incorporate Plaintiff's famous LEED tagline, and his website uses other marks," and defendant is "deemed to have acted knowingly and intentionally" by virtue of his default).

### 3.  Damages

Plaintiff's Motion for Default Judgment also requests an award of (1) statutory damages under 15 U.S.C. § 1117(c) for willful trademark infringement, (2) statutory damages under 15 U.S.C. § 1117(d) for cybersquatting, up to the statutory maximums permitted by law, and (3) treble damages and profits pursuant to 15 U.S.C. § 1117(b) based on the willful and deliberate nature of Defendants' infringing conduct. Mot. at 7.

Where a plaintiff plausibly states a claim for infringement of a registered trademark under 15 U.S.C. § 1114, "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any [infringing] use in connection with the sale, offering for sale, or distribution of goods or services[.]" 15 USC § 1117(c). In cases of no willfulness, the range of statutory damages is "not less

than $1,000 or more than $200,000 per counterfeit mark." *Id*. at § 1117(c)(1). "[I]f the court finds that the use of the counterfeit mark was willful," then the court may award up to "$2,000,000 per counterfeit mark." *Id*. at § 1117(c)(2). Courts in the Fifth Circuit consider the following factors: "(1) whether the defendant's conduct was innocent or willful; (2) the expenses saved and profits reaped; (3) the revenue lost by the plaintiff; (4) whether a defendant cooperated in providing particular records from which to assess the value of the infringing material produced; (5) the value of the . . . mark; (6) the potential for discouraging the defendant; and (7) the deterrent effect on others besides the defendant." *See Coach, Inc. v. Int'l Bazaar Inc.*, 2013 WL 12310712, at *5 (N.D. Tex. June 7, 2013) (Godbey, J.) (citing *Philip Morris USA, Inc. v. Lee*, 547 F. Supp. 2d 685, 696 (W.D. Tex. 2008)). And "[c]ourts enjoy wide discretion in determining damages" under the Lanham Act. *McCune v. Zhongyiqun*, 2023 WL 2912483, at *5 (N.D. Tex. Apr. 12, 2023) (O'Connor, J.). "[T]he purpose of section 1117 is to take all the economic incentive out of trademark infringement." *Am. Rice*, 518 F.3d at 340 (internal citations and quotations omitted).

Under the ACPA, the prevailing "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d); *accord Kiva Kitchen & Bath Inc. v. Capital Distrib. Inc.*, 319 F. App'x 316, 319 (5th Cir. 2009). Courts enjoy broad discretion in awarding damages within this range

and "the [trial] court . . . [is] constrained only by the specified maxima and minima." *Kiva Kitchen & Bath Inc.*, 319 F. App'x at 320 (citations omitted). The ACPA does not provide guidance for determining an appropriate amount of statutory damages. *See* 15 U.S.C. § 1117(d). Courts have therefore looked to damages awards assessed under the Copyright Act. *See E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 277–78 (5th Cir. 2002) (noting that "[t]he statutory damages provisions in the ACPA . . . are akin to the statutory damages provisions of the copyright laws," and looking to Copyright Act authority to affirm the trial court's award of statutory damages); *Philip Morris USA, Inc. v. Lee*, 547 F. Supp. 2d at 695 (applying Copyright Act authority to determine amount of statutory damages for Lanham Act violations).

Here, an award of $200,000 (or $100,000 per domain name) in statutory damages is appropriate. Defendants acted willfully in that they neither sought nor obtained Plaintiff's permission or authority to use the Liberty Tax marks for any purposes and they continued to infringe the Liberty Tax marks after Plaintiff sent a cease-and-desist letter to Defendants. Defendants also failed to appear or cooperate in this lawsuit. And a significant award would create a strong deterrent effect as to Defendants and others. In the absence of specific financial information regarding the value of the mark, any revenue lost by Plaintiff, or any expenses saved and profits reaped, the Court finds that a higher award is not warranted.

4. <u>Attorneys' Fees and Costs</u>

Plaintiff also seeks recovery of reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a) and TEXAS BUS. & COMM. CODE § 16.104. Mot. at 7; Am. Compl. at ¶¶ 88, 96; *see also* Am. Compl. at 24–25.

Section 16.104 only provides relief if the mark at issue is registered in Texas. *See Vesta Corp.*, 2016 WL 8710440, at *15 (citing TEX. BUS. & COMM. CODE §§ 16.102, 16.104). Thus, Plaintiff is not entitled to attorneys' fees and costs under TEX. BUS. & COMM. CODE § 16.104. *See id.*

In Lanham Act cases, the prevailing party may receive its attorney's fees in "exceptional cases." 15 U.S.C. § 1117(a). An exceptional case is one where "(1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). In addition, a case may be exceptional when "the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l*, 951 F.2d 684, 697 (5th Cir. 1992) (cleaned up); *see also Better Keiki, LLC v. MairicoDirect*, 2018 WL 5305571, at *7 (E.D. Tex. Aug. 29, 2018) (collecting cases as to willful trademark infringement). Further, a party's default can be enough to demonstrate a case is exceptional. *Viahart, LLC*, 2021 WL 6333033, at *17; *see also Real Est. Edge, LLC*, 2019 WL 830966, at *6 ("Here, [plaintiff's] infringement of [defendant's] mark can be

30

characterized as deliberate or willful because, by virtue of his default, he is deemed to have admitted to knowingly and intentionally infringing [defendant's] trademark."). Even still, the "district court must address this issue 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" *Baker*, 821 F.3d at 625. (citation omitted).

Here, Defendants engaged in willful conduct and they have failed to appear. Therefore, this is an "exceptional case" for the purpose of attorney's fees under the Lanham Act, and award of such fees is warranted. *See Viahart, LLC*, 2021 WL 6333033, at *17 (finding same); *US Green Bldg. Council, Inc.*, 2016 WL 3752964, at *6 ("Because Defendant is deemed by his default to have conceded that he acted knowingly and intentionally when he infringed on Plaintiff's trademarks, Plaintiff is entitled to attorney's fees under 15 U.S.C. § 1117(a)."). Plaintiff shall submit the appropriate documents supporting its fees and costs **within fourteen days of the entry of this Memorandum Opinion and Order**.

## IV.    Conclusion

In conclusion, the Court **GRANTS in part** and **DENIES in part** Plaintiff Liberty Tax's Motion for Default Judgment (ECF No. 40). Specifically, the Court denies Plaintiff's motion as to its claim for trademark infringement under TEX. BUS. & COMM. CODE § 16.102 and requested relief under § 16.104, but it grants the motion as to Plaintiff's claims for trademark infringement and unfair competition under the Lanham Act (15 U.S.C. § 1114) and Texas common law, as well as for dilution under

the Lanham Act (15 U.S.C. § 1125(c)) and Texas Business & Commerce Code § 16.103 and cybersquatting under the ACPA.

The Court **ORDERS** that Defendants Tiffany Alphonse, Liberty Taxes, LLC, and Liberty Consultants, LLC, their agents, employees, successors, and all persons acting in concert with them, are permanently enjoined from using Plaintiff's trademarks or any confusingly similar variants in connection with the marketing, promotion, or sale of tax preparation services—specifically including the use of "Liberty" as part of any business name or mark, or in any advertising, signage, website, or online domain, including but not limited to any social media platforms or third-party listing services. The Court **ORDERS** Defendants Alphonse, Liberty Taxes, LLC, and Liberty Consultants, LLC, their agents, employees, successors, and all persons acting in concert with them, to transfer to Plaintiff any infringing domain names—including but not limited to libertyconsultants.net—which incorporate or are confusingly similar to Plaintiff's trademarks. The Court further **ORDERS** Defendants to pay Plaintiff $200,000 in damages, as well as attorneys' fees and costs.

The Court also **DENIES as moot** Liberty Tax's Second Motion for Preliminary Injunction (ECF No. 29).

**SO ORDERED.**

September 2nd, 2025.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE

32